# Notley's Petition.

*Ejectment—Rule to bring ejectment — Compliance with rule — Action brought in Federal court—Jurisdiction—Acts of March 8, 1889, P. L. 10, and April 16, 1903, P. L. 212.*

1. Where, in a proceeding under the Act of March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212, the court makes absolute a rule requiring respondents to bring an action of ejectment within six months, five of the respondents, who are nonresidents of Pennsylvania, sufficiently comply with the order by instituting within six months an action of ejectment in the Federal court of the district in which the land is situated.

2. In such a case it is reversible error for the Court of Common Pleas, in which the proceedings were originally instituted, to enter judgment, at the instance of the defendants in the ejectment, for failure to institute an action of ejectment within six months as originally directed by that court.

3. Where the parties in the ejectment agree of record that the certified record from the United States Court should be considered by the Court of Common Pleas upon the application for judgment, the latter court may properly consider such record in determining whether the ejectment barred the Court of Common Pleas from entering judgment; and especially is this so since the Acts of March 8, 1889, P. L. 10, and April 16, 1903, P. L. 212, do not stipulate the practice to be pursued upon such an application for judgment.

4. In passing upon the propriety of the entry of such judgment, the appellate court may, as the proceeding is purely statutory, examine the opinion of the court below to see the basis on which it acted; and this is so even if the appeal should be considered as a certiorari: McCauley v. Imperial Woolen Co., 261 Pa. 312, followed.

5. There is no express provision in, or necessary implication to be gathered from the Acts of March 8, 1889, P. L. 10, and April 16, 1903, P. L. 212, which requires the action of ejectment, contemplated by the acts, to be instituted by the respondent in the court where the original proceedings, to force the bringing of the ejectment suit, were begun. If the respondents are nonresidents of Pennsylvania they have a fundamental right to sue in the Federal courts.

6. Where it appears that the record of the Federal court showed notice of the preliminary proceedings in the Court of Common Pleas, it is not to be assumed that the plaintiffs in the ejectment would be permitted to end their suit in the Federal court by nonsuit or discontinuance, against the protests of their opponent, any more readily than if ejectment had been brought in the Common Pleas.

7. Questions of title are not adjudicated in the original statutory proceedings under the Acts of March 8, 1889, P. L. 10, and April 16, 1903, P. L. 212, except where the respondent, after service, either fails to appear and show cause why an action of ejectment cannot be brought, or neglects to institute such action after an order so to do, when judgment passes by default; if, in compliance with the order, he brings his ejectment, the controversy over the title is settled in that action.

8. An order of court making absolute a rule to bring ejectment is a final order of the court. Gabler v. Black, 210 Pa. 514, overruled, in so far as it holds such an order interlocutory.

Mr. Justice STEWART filed a dissenting opinion.

Argued Oct. 14, 1918. Appeal, No. 139, Oct. T., 1918, by William E. Schricker et al., from order of C. P. Cambria Co., Dec. T., 1904, No. 539, making absolute rule for judgment for failure to bring ejectment In re Petition of D. E. Notley. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ. Reversed.

Rule to show cause why judgment should not be entered for failure to bring ejectment within six months. Before STEPHENS, P. J.

The court made absolute the rule for judgment. Wm. E. Schricker et al., respondents, appealed.

1919.]          Assignment of Error—Arguments.

*Error assigned* was the order of the court making absolute the rule.

*John E. Evans,* with him *Charles Gulentz* and *Charles S. Evans,* for appellants.

*F. J. Hartman,* with him *William A. McGuire,* for appellee.—Where the proceeding is statutory and not according to the course of the common law, neither a writ of error, nor an appeal lies: Aurentz v. Porter, 48 Pa. 335; Lewis v. Wallick, 3 S. & R. 410; Young's App., 2 P. & W. 380. No appeal having been provided for in this statute, from the judgment entered by the court below, the only method of review is by certiorari, which brings up only the record for review and correction: Kimber v. Schuylkill Co., 20 Pa. 366; Chase v. Miller, 41 Pa. 403; Schmuck v. Hartman, 222 Pa. 190; Robertson v. Kraus, 58 Pa. Superior Ct. 331.

The opinion of the court below and the testimony are no part of the record: Plunkett's Creek Twp. v. Fairfield Twp., 58 Pa. 209; Darby v. Sharon Hill, 112 Pa. 66.

We contend the record proper, at which this court will look in disposing of the question before it, at most, would consist of the petition for the rule, the rule, the answer, the service of the rule and appearance for respondents, the order making the rule absolute, the petition for substitution, the motion for judgment, the judgment and the docket entries. By an inspection of these, and from these alone, must the rights of the parties to this proceeding be determined.

The court below at the time of making the rule absolute to bring an action of ejectment had jurisdiction of both the subject-matter and of the parties.

There is but one question open, and that is, was the jurisdiction of the court below over the parties and over the subject-matter of this proceeding exhausted when it made the rule to bring an action of ejectment absolute on January 1, 1906? The answer to this question will de-

pend largely upon whether or not the action of ejectment is comprehended in the proceeding "to settle title to real estate" within the meaning of the acts of assembly: Petit v. Fretz, 33 Pa. 118; Cumberland County v. Boyd, 113 Pa. 52.

Where the jurisdiction of a court once attaches in a cause, it will retain it until the end of the controversy: Taylor v. Carryl, 24 Pa. 259; Wallace v. McConnell, 13 Pet. 136; Harkrader v. Wadley, 172 U. S. 148; Turbett Twp. Overseers v. Overseers of the Poor, 33 Pa. Superior Ct. 520; Scranton v. Ansley, 34 Pa. Superior Ct. 133.

OPINION BY MR. JUSTICE MOSCHZISKER, January 13, 1919:

In December, 1904, D. E. Notley, a citizen and resident of this State, alleging ownership of two certain tracts of land, acquired from and in the possession of W. A. Chaplin and T. F. Callan, filed a petition in the Common Pleas of Cambria County, under the Act of March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212; petitioner prayed that William E. Schricker, Richard L. Schricker, Selma Schricker, Ottilie Pietruski, Harriet Dvorak, and H. H. Stevens, who, he alleged, claimed an interest in and title to the lands in question, be required to show cause why they should not bring an action of ejectment. An appearance was entered for respondents, who filed an answer; depositions were taken, and, after argument, on January 1, 1906, the court below made absolute a rule requiring respondents to bring an action of ejectment within six months from that day. June 29, 1906, the first five of the hereinbefore named respondents, all nonresidents of this State, instituted an action of ejectment, in the Circuit Court of the United States for the Western District of Pennsylvania, to recover the two tracts of land in controversy, reciting in their præcipe that the property sued for was the same as described "in a certain petition, and proceedings thereon [stating term and number], in the Court of Common

Pleas of Cambria County, Pa., upon the petition of D. E. Notley"; the summons in ejectment was duly served, and Messrs. Notley, Chaplin and Callan, the defendants named therein, appeared by counsel, each side filing abstracts of title and pleadings.

Notwithstanding the pendency of the ejectment suit in the United States Court, on June 14, 1918, Kathryn Q. McGuire, claiming to have acquired the title of Messrs. Notley, Chaplin and Callan, was substituted as plaintiff in the proceedings commenced in the Common Pleas; she forthwith presented a petition in the latter court, praying judgment against the respondents for failure to institute their action of ejectment within six months, as originally directed by that tribunal. An order was entered, directing, in effect, that exceptions be filed by way of answer to this application for judgment; accordingly, the five respondents, who are now here as appellants, replied that they had complied with the order to bring ejectment by instituting such an action in the Federal court, that the original petitioner, D. E. Notley, and the two others through whom she claimed title (being the defendants in the ejectment suit), were citizens of Pennsylvania, while all five exceptants (plaintiffs in that suit), were either aliens or citizens of other American commonwealths, that all the defendants in the ejectment proceedings had appeared and filed pleadings, as before recited, and that the jurisdiction of the United States Court had not been questioned in that tribunal; finally, they tendered a certified copy of the proceedings in the Federal court, and asked that the motion for judgment be dismissed.

On June 21, 1918, a written agreement was filed in the Common Pleas, between counsel of record on both sides, to the effect that the certified record from the United States Court should be considered in passing upon the application for judgment. Subsequently, the court below determined that the bringing of the ejectment in the federal jurisdiction was not a compliance with its original

order, and entered judgment against all the respondents, decreeing that "each and every of them, their heirs, executors, administrators or assigns, or any and all persons claiming by, from, through or under them or any of them, be......and each of them are, hereby forever barred from bringing any action of ejectment or otherwise claiming any right, title or interest," in the lands in controversy; the five respondents hereinbefore designated have appealed from this judgment and decree.

The real question involved is: Did the institution of the action of ejectment by the five respondents in the United States Court, within the period of six months from the order of the Common Pleas directing the bringing of such a suit, bar the court below from entering the judgment here complained of?

Before considering the question just stated, we shall pause to examine several minor contentions raised by appellee. In the first place, it is contended, since neither the Act of 1889, supra, nor its amendment of 1903, provides for an appeal, the present case comes up on certiorari; therefore, that we are strictly confined to an inspection of the record of the court below, and the reasons given by that tribunal for entering its judgment cannot be taken into account. The quotation of the following brief excerpt from McCauley v. Imperial Woolen Co., 261 Pa. 312, 321, sufficiently disposes of this contention against the appellee: "On certiorari, judicial review is usually limited to a mere inspection of the record, to ascertain whether the judgment in question is in conformity therewith, or to see whether the tribunal which rendered such judgment either exceeded its jurisdiction or abused its discretion, and, generally speaking, the opinion of the lower tribunal is no part of the record; in statutory proceedings such as the one at bar, however, it is now firmly established with us that, even on certiorari, an appellate court may examine the opinion of the court below to see the basis on which it acted."

Next, the appellee contends that appellants had no right to show, in reply to her rule for judgment, anything dehors the record of the Common Pleas; that the filing of exceptions, and exhibition of the record of the United States Court, was without legal warrant, and this tribunal should ignore the facts thus disclosed. True, the Act of 1889, as amended by the Act of 1903, supra, fails to provide either for exceptions, answer, or other method of objection, to a petition or rule for judgment, when such application is placed on the ground that a previously entered order to bring ejectment within six months had not been complied with; but it is equally true that neither one of these acts makes any express provision for, or in terms authorizes the taking of, a rule for judgment under such circumstances, the only definite provision for judgment being that, when a respondent, served with notice of the original rule to bring ejectment, shall fail to appear "and show cause why such action cannot be brought within six months after such service, it shall be the duty of the court to enter judgment." We have, however, heretofore, in Foster's Petition, 243 Pa. 92, 99, construed the act to mean that a "respondent has six months from the date of the order to bring his action before judgment can be entered against him," and that, at the end of the six months, if no action has been brought, such judgment may be entered. The record of the ejectment proceedings in the United States Court was put before the Common Pleas, by agreement of counsel; since the legislation in question does not stipulate the practice to be pursued upon an application for judgment, such as we are now considering, the court below correctly guided the case in that respect; the issue raised, by what we have already designated as the real question involved, was properly in that tribunal for adjudication, and the judgment thereon is now here for review.

There is no express provision in, or necessary implication to be gathered from, the relevant legislation, supra, which requires the action of ejectment, contem-

plated by these statutes, to be instituted in the court where the original proceedings, to force the bringing of the ejectment suit, were begun. As stated in Heppenstall v. Leng, 217 Pa. 491, 495, "This and prior kindred legislation was enacted for the purpose of providing a person in possession of real estate with a remedy for quieting his title, which did not exist at common law, by compelling an adverse claimant out of possession to bring his ejectment, and, failing to do so, thereafter to be deprived of the right to bring the action and contest such person's title to the premises": see also Foster's Petition, 243 Pa. 92, 95. In other words, the purpose of the legislation is to compel a claimant out of possession either to bring an action of ejectment or suffer the penalty of having his claim of title settled against him by a judgment of default.

Questions of title are not adjudicated in the original statutory proceeding, except where the respondent, after service, either fails to appear and show cause why an action of ejectment cannot be brought or neglects to institute such action after an order so to do,—when judgment passes by default; if, in compliance with the order, he brings his ejectment, the controversy over the title is settled in that action: Welsh v. Clough, 216 Pa. 276, 278; Clark v. Clark, 255 Pa. 574, 577. Of course, the ejectment suit may be instituted in the same court in which the original statutory proceedings were commenced, and, when so brought, may retain the same term and number; but, as before said, there is nothing in the acts of assembly which requires the ejectment to be instituted in that particular tribunal, particularly where as in the present case, the parties out of possession, claiming title, have a fundamental right to sue in the federal courts. On the last point see Constitution of the United States, Article III, Section 2, and Article VI; Hunt v. Orwig, 17 B. Mon. (Ky.) 73, 85. See, also, Williams v. Crabb, 117 Fed. 193, 197, where it is said, "A state cannot, by its legislature, restrict a......right or remedy

......to enforcement in its own courts, the conditions of citizenship being such that they would otherwise be enforceable in the federal courts.. By any other view it would be in the power of a state by legislation to deprive citizens of other states either of the new right or remedy given by the state statute or of the forum granted by the Federal Constitution and laws. The citizen of another state cannot be compelled to make such election, or to accept a remedy upon condition that he forego the constitutional forum to which he would otherwise be entitled," citing numerous authorities. The Federal Supreme Court refused a petition for a certiorari in the last-mentioned case: see Crabb v. Williams, 187 U. S. 645.

The court in which the statutory proceedings to compel the bringing of the ejectment are commenced, has jurisdiction over the respondent in that action to enforce all its decrees, up to and including the order directing the institution of the ejectment suit; but it is apparent that, even if the legislature had undertaken so to ordain, there is a grave question whether they could deprive parties respondent, in the position of the present appellants, from the right to commence their action in the United States Court. It is not necessary, however, to determine that point, for, as heretofore suggested, the present statutes do not undertake to direct where the ejectment suit shall be brought.

We are not impressed by appellee's argument that, since the United States courts might possibly permit either a nonsuit or discontinuance of an action begun in such tribunals, it is therefore inconceivable that the Act of 1889, supra, contemplates the possibility of an ejectment, ordered in a proceeding instituted thereunder, being brought in other than the court wherein the original petition was filed. In this connection, it may be noted that the record of the District Court shows notice of the preliminary proceedings under the Act of 1889, supra, entered in the Common Pleas of Cambria County,

Pennsylvania; and, in accord with what is now estab-
lished practice, it is not to be assumed that the plaintiffs
would be permitted to end their suit in the federal juris-
diction, against the protests of their opponents, any
more readily than if ejectment had been brought in the
court below.

Finally, one other point made by counsel for appellee,
in their able argument to sustain the judgment under at-
tack, merits notice. In Gabler v. Black, 210 Pa. 541, a
proceeding under the Act of 1889, supra, we quashed an
appeal making absolute a rule to bring ejectment, stating
(p. 543) that "the order of court making the rule absolute
is not a final adjudication of the party's interest in, and
title to, the premises." Appellee contends this ruling
was in effect a holding by us that the legislation in ques-
tion contemplates and requires the bringing of the eject-
ment in the Common Pleas, as an integral part of the
original proceeding to enforce the institution of such an
action. An examination of the paper-books in that
case, however, shows that the appellant was there seek-
ing to have adjudicated, inter alia, questions of title,
which would arise in the ejectment suit, when com-
menced, and which were not properly involved in the
proceedings to enforce the bringing of the ejectment.
Moreover, in several subsequent cases we treat an order
making absolute the rule to bring ejectment as final (see
Fearl v. Johnstown, 216 Pa. 205; Spangler v. Trogler,
228 Pa. 217), and these are followed by the Superior
Court in West v. Hanna, 57 Pa. Superior Ct. 445, 452,
453, where Judge PORTER, citing Fearl v. Johnstown,
supra, says, "When the court made absolute the rule
......to bring an action of ejectment, or to be barred,
that was a final order so far as those proceedings were
concerned, and the respondent was in position to appeal.
......When he elects to bring an action of ejectment,
that action is collateral to the proceeding under the Act
of 1889, and, upon the trial of the issue arrived at in the
action of ejectment, he cannot raise any question as to

the regularity of the order made in the original [statutory] proceeding." We have examined all our decisions under the acts now before us, and find nothing at material variance with the views here expressed, except, possibly, Gabler v. Black, supra, which, as already pointed out, has not been followed either by this court or the Superior Court; and so far as the decision in that case is in conflict with our present views, it must be understood as overruled.

Since we are of opinion that the institution of the ejectment in the United States Court, by the present appellants, was sufficient compliance with the order of the court below to bar that tribunal from entering the judgment here complained of, it is not necessary to consider appellants' contention that the appearance of the original complainants, as defendants in the ejectment suit, and their subsequent participation in that action, estopped their successor in title (the appellee here) from asking judgment in the Common Pleas.

The judgment of the court below and the accompanying decree, so far as they affect the present appellants, are reversed and set aside, at the cost of the appellee.

DISSENTING OPINION BY MR. JUSTICE STEWART:

I would adhere to and enforce in this case the general rule that governs in cases of conflict between courts of concurrent jurisdiction. This rule is thus expressed and defined in Corpus Juris under the subtitle of "Courts," page 1161, section 637: "Where a state and a federal court have concurrent jurisdiction over the same parties or privies and the same subject-matter, the tribunal where jurisdiction first attaches retains it exclusively, and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue or question properly arising in the case. This jurisdiction continues until the judgment rendered in the first action is satisfied and extends to proceedings which are ancillary or incidental to the action first

brought. Accordingly, where the jurisdiction of a state or federal court has once attached, it cannot be taken away or arrested by proceedings subsequently instituted in the other court; but the usual practice is for the court in which the second action is brought not to dismiss such action, but to suspend proceedings therein until the first action is tried and determined, and in a few cases the federal courts have declined even to stay proceedings until the determination of an action between the same parties for the same cause previously commenced in a state court, basing such refusal on a lack of power." The authorities given in support of this rule are too numerous to be here cited; they will be found collated in the note to the text above quoted. The majority opinion furnishes no reason whatever for excepting the present case from the operation of the rule, and indeed ignores the question of the rule itself. It goes further, and overrules our own case of Gabler v. Black, 210 Pa. 541, which case in my judgment is sound law. In Taylor v. Carryl, 24 Pa. 259, the rule we would here apply is clearly recognized coupled with a grave warning against departure therefrom. Mr. Justice LOWRIE in that case distinguishing between federal and state courts of concurrent jurisdiction says, "It [the reference being to the Federal District Court] is merely a coördinate court, and its suitors must be content to have it governed by the principle that, among equal jurisdictions, that is exclusive which is first attached." It does not admit of question that the proceeding in the court below was lis pendens since the act under which it was begun—16 April, 1903—expressly provides that the party against whom the rule is there made absolute refuses to bring his action of ejectment, the other party may at the expiration of the six months from the service of the rule, apply to the court and have judgment entered against the party in default, which judgment "shall be final and conclusive between the parties, their heirs and assigns, and thereafter no action of ejectment for the

recovery thereof shall be brought by such persons claiming an interest in, or title to, such real estate, or any person claiming by, from or under such person." This would be a conclusion of the proceeding begun, and except as appealed from would be a final adjudication as to title and ownership of the real estate in question. Furthermore, it is expressly provided by section 1 of the act in question that the rule issued in the first instance, at the institution of the proceeding, "shall be entered of record and indexed as actions of ejectment are now indexed in the courts of the Commonwealth." In view of the plain provisions and requirements of this act it is impossible for me to reach other conclusion than that the jurisdiction of the Common Pleas of Cambria County had attached in this case before the action of ejectment in the federal court was instituted. On the ground that this jurisdiction then became exclusive I would affirm the judgment.